ADELARD E. COUTURE, JR., *Ex. vs.* INDUSTRIAL TRUST COMPANY.

APRIL 28, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Baker, J. This is an action of the case in assumpsit. It was tried in the superior court to a jury which returned a verdict for the defendant. The trial justice thereafter denied the plaintiff's motion for a new trial, and the case is now before this court on the latter's bill of exceptions, the only exception now pressed being to the denial of said motion. His other exceptions, therefore, are considered as waived.

The action is brought by the plaintiff, in his capacity as executor of the will of his father, to recover from the defendant the sum of $3908.28 with interest, on the ground that said sum is part of his father's estate. The plaintiff alleges that on certain dates, as executor as aforesaid, he made, in the defendant bank, deposits which in the aggregate totaled the above sum, and that said bank now wrongfully refuses to repay him after he made a demand upon it for such repayment.

It appears from the evidence that when the plaintiff's father died on January 26, 1936 in Warren he owned ten tenement houses and a garage with a large number of stalls situated in that town. The plaintiff qualified as executor of his father's will on April 21, 1936. In this will the plaintiff, his mother, who died July 8, 1938, and his sister were the sole beneficiaries. On the above real estate the defend-

ant held four mortgages securing separate loans which had been made to the plaintiff's father and which originally aggregated the sum of $41,000. These loans and mortgages were made on dates between October 16, 1925 and March 31, 1930. In October 1933 the plaintiff's father was in financial difficulties and the town of Warren was apparently about to sell the above-mentioned real estate for overdue taxes. At that time he also owed the defendant bank money on account of interest on the mortgages and for insurance premiums which it had paid on his account.

According to the uncontradicted testimony of the manager of the Warren branch of the defendant bank, he and the plaintiff's father on October 16, 1933 made an agreement orally which, in substance, was that the plaintiff's father should pay to the bank all income and rents derived from the property covered by the above mortgages. These moneys the bank was authorized to apply at once, as they were deposited, to payments which it had already made on the account of the plaintiff's father in connection with the property in question, and to such advances as it might have to make in the future. In return the bank was to advance money to pay all overdue taxes and insurance on the property, to make similar payments thereafter as they became due, and to apply any balance as it saw fit on the interest due on such mortgages. This arrangement was carried out by the bank and by the plaintiff's father up to the time of his death. The latter paid into the defendant bank in pursuance to said understanding $5800.11. At the time of his death, however, he still owed the bank $5615.69 for advances which it had made on his behalf.

On February 4, 1936 the plaintiff consulted the assistant manager of the Warren branch of the defendant bank, the manager being away, and delivered $200 from rents collected from his father's property. On February 18, 1936 the plaintiff also conferred with said manager upon his re-

turn. Following these conferences the plaintiff turned over from time to time to the said bank the income and rents of his late father's real estate. This procedure continued until January 19, 1937 when the plaintiff was informed by the defendant, in substance, that it would make no further advances in connection with the mortgaged property, and would be obliged to foreclose its mortgages because the overdue indebtedness on the property was not being sufficiently reduced.

During the latter part of 1936 and in January 1937 the defendant had informed the plaintiff that, if foreclosure was to be avoided, he must make additional payments to the defendant on account of such mortgages, and suggested that he make such payments out of his own funds. This the plaintiff declined to do. Eventually the mortgages in question were foreclosed in May 1937 and the property sold. Immediately thereafter the plaintiff demanded from the defendant the money which he had allegedly deposited since February 4, 1936. This demand was refused by the defendant.

As tried in the superior court, the controlling question in the case was the nature of the understanding between the plaintiff and the defendant, acting through its manager and its assistant manager in Warren, concerning the purpose and character of the so-called deposits which the plaintiff made to the bank after his father's death.

To support his contention that he was entitled to recover these deposits the plaintiff testified, in substance, that immediately after his father's funeral his mother, his sister, and he himself agreed that the rents of the real estate in question be thereafter collected and deposited by him in the defendant bank in Warren as an estate account, so that the debts of and the claims against said estate might be paid. Plaintiff's sister testified that he was to collect and use the rents "for the interest of the estate and the debts." Plain-

tiff further testified that, in accordance with the above agreement, on February 4, 1936 he consulted defendant's assist-ant manager in Warren in regard to opening a new account with the rents in order to pay such debts and claims, and showed him his father's "bankbook", which was headed "Mortgage Int. a/c Adelard Couture", and the will in which plaintiff was named as executor; that the assistant manager wrote in the book under his father's name the following: "Estate (2/4/36)"; and that the plaintiff then made a deposit of $200 which was noted in such book, as were subsequent payments made by him.

The defendant, on the other hand, maintained that no new or estate account was opened by the plaintiff on February 4, 1936 or thereafter, but that the plaintiff made payments of rent under the same conditions and arrangement which the defendant had with his father. The assistant manager of defendant's Warren branch testified that on February 4, 1936 plaintiff came to the bank, asked for the manager, who was away, and then handed the witness a sum of money, stating that he wished to continue the arrangement which his father had with the bank in regard to the real estate; that the plaintiff had the book his father had used; that the witness made out the deposit slip in plaintiff's presence; that witness did not remember seeing any will, but that he was told by the plaintiff that he expected to be appointed executor or administrator; that nothing was said about opening a new account for the estate; that the witness wrote the word "Estate" on the book, and the date; that the rent money then and later paid into the bank was credited by it directly on the mortgages; and that there was no account in the bank in the name of the Adelard Couture estate.

The manager of the defendant bank in Warren gave evidence that he made the original agreement with the plaintiff's father in 1933 concerning the rents from the latter's

real estate; that on February 18, 1936 the plaintiff came to the bank and expressed his appreciation for what it had done for his father, stating that he would like to continue the same arrangement, and going into some particulars about the collection of the rents; that witness stated that the arrangement would be acceptable for the time being; that the matter of the mortgages was thereafter often discussed by the witness and by the plaintiff; that in December 1936 and in January 1937 one of the vice-presidents of the bank was present at several of such talks; and that no claim was made for these payments until after the mortgages had been foreclosed. Testimony given by the said vice-president corroborated in general the testimony given by the previous witness.

On this conflicting evidence the jury accepted the defendant's version of the transaction. The trial justice, in a comprehensive and well-considered rescript, sustained in positive terms their verdict for the defendant, concluding as follows: "There could have been no other just verdict than that rendered by the jury." In denying the plaintiff's motion for a new trial the trial justice stated in his rescript that, in his opinion, the great weight of the credible testimony, supported by the conduct of the parties and the probabilities of the case, strongly upheld the defendant's contentions as to the arrangement in question.

He pointed out that it was undisputed that when the plaintiff made his first payment on February 4, 1936 the latter received no checkbook, nor did he ever ask for one later; that only one small claim was filed against his father's estate and that such claim was disallowed; that he paid the funeral expenses from other funds; that he paid the rents into the bank regularly about twice a month until January 1937, when foreclosure proceedings were threatened, at which time he stopped making payments; that he then made no demand upon the bank for the payments which he had made

and, in fact, made no such demand at all until after the foreclosure had taken place; and that he never withdrew any money from the account, so called, for himself, his mother, or his sister.

Other circumstances of a like nature appearing in the evidence were the plaintiff's failure to sign any signature card at the bank on February 4, 1936, although he claimed that he was at that time opening a new account; his making of several alleged deposits prior to his qualification as executor; and the fact that in the inventory of his father's estate, filed by him as executor, he set out that there was no personal estate. The trial justice also noted in his rescript that, considering the situation in regard to the mortgages, it seemed inconceivable that the bank would permit the plaintiff to keep all the rents as executor or otherwise without some arrangement as to taxes, interest, insurance and overdue indebtedness.

The plaintiff argues that the above decision of the trial justice should not be given the weight and persuasive force which such a decision is ordinarily accorded by this court because, in making his decision, the trial justice misconceived and omitted to consider certain evidence, and decided contrary to so-called established physical facts. In our opinion, the above contentions of the plaintiff are without merit. There is nothing to indicate to us that the trial justice misconceived any evidence or failed to consider all of it in making his decision on said motion; and the so-called physical facts referred to by the plaintiff are, in substance, the entries on the "bankbook" or account record of plaintiff's father, on the deposit slips, and on the bank's mortgage cards. In our judgment such entries, as explained, were merely evidentiary facts to be considered with all the other evidence in the case in determining what arrangement, if any, was made by the parties concerning the money in dispute, and were apparently so considered.

The plaintiff also urges that the uncontradicted testimony shows that the devisees of his father's realty agreed that the rents be collected and deposited as part of the assets of the latter's estate. The plaintiff contends, therefore, that, without permission of the probate court, he had no authority to make, and could not make, any such arrangement with the bank in regard to the rents as it claims was made, and that he had to account for such rents as executor.

In our opinion the plaintiff takes nothing by this contention. In the first place, the jury did not have to believe and may not have believed the testimony as to the making of such an agreement. Further, there is no evidence that the bank had knowledge or notice of such alleged agreement between the devisees. But, in any event, the plaintiff is not entitled to raise this question on the present record. The only exception pressed before us is to the denial of the plaintiff's motion for a new trial based on the usual grounds. Under such circumstances, the charge of the trial justice became the law of the case. See *Union Fabrics Corp.* v. *Tillinghast-Stiles Co.*, 58 R. I. 190. In substance, he charged the jury, among other things, that the basic question for them to decide was the nature of the agreement between the parties as to the payments in issue; that, if they found that the deposits did not belong to the father's estate, the plaintiff had a right to make such an agreement as was testified to by the defendant's witnesses; and, if they believed the defendant's version of the agreement, then it had a right to apply the funds in the way it did.

In passing upon the facts, the jury and the trial justice had the benefit, which we do not have, of seeing and hearing the witnesses testify. We have carefully considered the evidence and, after so doing, cannot say that the decision of the trial justice denying the plaintiff's motion for a new trial was clearly wrong. That being the case, under our well-established rule, we do not disturb his decision.

The plaintiff's exception is overruled, and the case is remitted to the superior court for the entry of judgment for the defendant upon the verdict.

*Joseph R. McKanna, Roland E. Meunier,* for plaintiff.

*Huddy & Moulton, Stuart H. Tucker,* for defendant.